Girardeau A. SPANN, et al., Plaintiffs,

v.

COLONIAL VILLAGE, INC.,
Defendant.

Girardeau A. SPANN, et al., Plaintiffs,

v.

Marvin J. GERSTIN, et al., Defendants.

Girardeau A. SPANN, et al., Plaintiffs,

v.

Howard BOMSTEIN, et al., Defendants.

Civ. A. Nos. 86–2917, 86–3196
and 86–3268.

United States District Court,
District of Columbia.

Oct. 13, 1988.

Kerry Alan Scanlon, Washington Lawyers' Committee for Civ. Rights Under Law, William H. Jeffress, Jr., David G. Webbert, Kiki Kuckes, Miller, Cassidy, Larroca and Lewin, Washington, D.C., for plaintiffs.

Peter L. Sissman, Arlington, Va., Thomas W. Farquhar, Washington, D.C., for Marvin J. Gerstin and Marvin Gerstin Associates, Inc.

Reuben B. Robertson, Ingersoll & Bloch, Washington, D.C., Dennis H. Bloomquist, General Counsel, Mobil Land Development Corp., New York City, for Mobil Land Development Corp.

Reuben B. Robertson, Ingersoll & Bloch, Washington, D.C., for defendant Colonial Village, Inc.

## MEMORANDUM AND ORDER

HAROLD H. GREENE, District Judge.

On May 22, 1987, 662 F.Supp. 541, this Court dismissed two of the above-captioned consolidated cases.[1] Plaintiffs Girardeau A. Spann, et al., appealed and on July 1, 1988, the Court of Appeals dismissed the appeal on the ground that a final order from this Court was wanting. In this Memorandum, the Court addresses two remaining motions, the resolution of which makes judgment in these cases final. The Court will consider in turn defendant Mobil Land Development Corporation's (Mobil) motion to dismiss or quash service of process and the motion by defendants Marvin J. Gerstin, et al., for Rule 11 sanctions against plaintiffs. Fed.R.Civ.P. 11.

### I

Plaintiffs attempted proper service on Mobil in several ways, one of which proved satisfactory. On three occasions plaintiffs tried to serve Mobil by mail, once by personal service in New York, and once by serving Mobil's wholly owned subsidiary Colonial Village, Inc. The last method effected service on Mobil.

It seems that plaintiffs first tried to serve Mobil with a summons and complaint at an address in Virginia, a mailing that defendant did not acknowledge. Likewise, Mobil did not sign and return the acknowledgement and receipt forms for the second and third mailings, which went to a New York address and which were sent on December 19, 1986 and January 20, 1987.

■ Plaintiffs' contention that the third mailing, the second to the same address in New York, simultaneously satisfied the D.C. long-arm service procedure, is not well taken. Rule 4(c)(2)(C)(i), permitting service in accordance with state law, is available as an alternative to Rule 4(c)(2)(C)(ii) only in the first instance; they may not be used sequentially. *Id.* at 444–48.

On February 19, 1987, plaintiffs made a fourth attempt to serve Mobil directly, this time by personal service, but service was not made within the territorial limits of the District of Columbia, *see* Fed.R.Civ.P. 4(f), and there is no federal statute or rule generally authorizing extraterritorial service in actions under the 1866 Civil Rights Act or the Fair Housing Act. *See Omni Capital International, et al. v. Rudolf Wolff & Co., Ltd., et al.,* 484 U.S. 97, ——, 108 S.Ct. 404, 410–11, 98 L.Ed.2d 415, 425 (1987).

■ Mobil concedes, however, that service was effective on Colonial Village, Inc., its wholly-owned subsidiary. Plaintiffs contend that since Colonial Village holds itself out to the public as "a Mobil company," that service on it effected service on Mobil. They are correct. Certainly one corporation or business organization can be "the agent of another corporation so that service on an ... agent of one organization can be valid service on another." 4A C. Wright & A. Miller, *Federal Practice and Prcoedure* § 110 at 123 (1987); *see also Heise v. Olympus Optical Co.,* 111 F.R.D. 1, 6 (N.D.Ind.1986) (citing cases). Mobil conducts business in this jurisdiction, in many ways, including through Colonial Village, whose employees expressly hold themselves out as agents of Mobil. They list the parent corporation on their business cards and advertise Mobil's control of the property. *See, e.g., Price v. Griffin,* 359 A.2d 582, 586 (D.C.App.1976); *see also Dunn Appraisal v. Honeywell Information Systems,* 687 F.2d 877, 881 (6th Cir. 1982).

In this vein, "notice seems to be the keystone to proper service." 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1101 at 105. It is quite obvious

---

**1.** The third case was dismissed by stipulation of the parties.

that the parent company Mobil had actual notice of this action, as it concedes at this point. Consequently, service was properly effected on Mobil.

## II

■ On July 13, 1987, over one month after defendants Gerstin, et al., filed their appeal in this action, they moved for Rule 11 sanctions against plaintiffs premised on a number of claims which struggle to find fault with plaintiff's legal representations. Some of the requests for sanctions are preposterous, such as the assertion that plaintiffs intended to frustrate the litigation they instigated, or to lay a foundation for a future request for an extension of time, by allowing an attorney to file a complaint who anticipated withdrawing from the case. Equally absurd is the claim that the Court should impose sanctions on plaintiffs for "delaying" this action because they requested that the action be consolidated with like actions and then moved to disqualify counsel in one of the other cases. There is nothing unusual or improper about this.

■ Other charges by defendants as grounds for Rule 11 sanctions are similarly without merit. The assertions made by plaintiffs in their complaint and contested by defendants do not lack a reasonably defensible basis in fact or law. For example, defendants contend that their advertising during the 180 days prior to the filing of the complaint does not indicate a racial preference, and that the complaint is therefore without basis in fact. In fact, however, the complaint of racial preference in defendants' ads is not limited to that time period. Only the last asserted occurrence of a practice of racial preference need be in that 180 day period. In its Opinion of May 22, 1987, the Court found that the last of defendants' all-white ads was published within the 180-day limitations period beginning on May 24, 1986.

■ Defendants also contend that plaintiffs deliberately overread regulations of the Department of Housing and Urban Development in order to cause the Court to believe that they require advertising mod-

els to represent majority and minority groups in the metropolitan area, when the regulations are merely safe harbors. Defendants do not cite any case law that these regulations are not intended to have the force of law or to govern in this litigation. The regulations are of course entitled to substantial deference by the Court when interpreting the Fair Housing Act, *Gladstone Realtors v. Village of Bellwood,* 441 U.S. 91, 107, 99 S.Ct. 1601, 1611–12, 60 L.Ed.2d 66, 81 (1979), and plaintiffs can, at a minimum, argue as much. In short, the requests for sanctions are frivolous, and to grant them would be to chill respectable though novel advocacy.

Consequently, it is this 13th day of October, 1988

ORDERED that defendant Mobil's motion to dismiss or quash service of process be and it is hereby denied; and it is further

ORDERED that the motion of the Gerstin defendants for sanctions be and it is hereby denied.